UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BECKY MICHEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-01056-SLD |
| ) | |
| PRINCEVILLE COMMUNITY UNIT ) | |
| SCHOOL DISTRICT#326 BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. | |

<u>ORDER</u>

Before the Court is Plaintiff Becky Michel's Motion to Alter or Amend Judgment, ECF No. 32, pursuant to Federal Rule of Civil Procedure 59(e). This Court granted summary judgment for Defendant, Princeville Community Unit School District #326 Board of Education ("the Board") on September 15, 2015, S.J. Order, ECF No. 30, dismissing all claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Michel seeks to have the Court reconsider its basis for that decision. For the following reasons, Michel's Motion to Alter or Amend Judgment is DENIED.

**Background**

Michel challenges only the Court's ruling under the indirect method of proof, arguing that the Court did not address her argument that she was treated in a disparate manner in the application of the Board's employment expectations. Pl.'s Mem. Supp. Mot. Alt. J. 4, ECF No. 32-1.[1] Michel seeks relief on the basis that the Court patently misunderstood or misapprehended

---

[1] The Court considered the Seventh Circuit's recent decision in *Ortiz v. Werner Enterprises, Inc.*, No. 15-2574, 2016 WL 4411434 (7th Cir. Aug. 19, 2016) in reaching its decision. The court in *Ortiz* rejected the use of "convincing mosaic of discrimination" as a legal standard, and clarified that the applicable standard is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other

1

this argument. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Examination of the Summary Judgment Order shows that the Court addressed and carefully analyzed the relevant arguments in coming to its conclusion. The Court also found that Michel did not establish the existence of a similarly situated employee who had been treated more favorably on the basis of gender, S.J. Order 15, or age, *id.* at 22.

## Facts

For purposes of this motion, some background on Plaintiff's relationship with Superintendent Jim Colyott, which was comprehensively detailed in the Summary Judgment Order, is necessary.

### i. Plaintiff's Formal Evaluations by Colyott

Colyott became superintendent in July 2008. Michel received her first formal evaluation from Colyott in January 2009. She received a satisfactory performance rating for the 2008-2009 school year. Though the review was largely positive, Colyott criticized Michel's ability and/or willingness to complete assignments by the given deadline: "Becky must understand that when she is asked to complete a written or verbal professional task by the District Superintendent that it is not to be considered optional and must be made a priority."

Michel's next formal evaluation occurred in January 2010. She received an unsatisfactory performance rating. The report stated that "[t]here have been many instances during this evaluation year where [Plaintiff] has not complied with the verbal and/or written directives of the superintendent" and included a non-exhaustive list of such incidents.

---

proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 2016 WL 4411434, * 4. Though this Court's Summary Judgment Order ostensibly used the "direct" and "indirect" labels to organize its analysis, the Court was clear to identify that the fundamental question was whether Michel's evidence "create[d] a genuine material issue of fact that Michel was intentionally discriminated against based on her gender." S.J. Order 14. Further, the Seventh Circuit specifically noted that *McDonnell Douglas* and other burden-shifting frameworks remain untouched as a means of creating an inference of discrimination; the disposition in this order turns on precisely that method of proof, and is therefore unaffected by the *Ortiz* decision.

Michel also received an unsatisfactory performance rating for the 2010-2011 school year. In the comments section of the evaluation, Colyott wrote that "Michel's lack of improvement in her administrative performance since her last performance evaluation is disappointing," and admonished Plaintiff for her continued failure to follow directives in a timely manner: "[Plaintiff] must understand that the assignments and tasks of a school administrator are at times, difficult, challenging, and certainly time consuming. This does not negate the fact that the tasks must be done and usually in conjunction with a specific timeline."

### ii. Recommendation of Dismissal

The Summary Judgment Order detailed the incidents Colyott relied on in his recommendation to dismiss Michel, S.J. Order 6–9, a sampling of which include:

(1) On July 8, 2008, Colyott instructed Michel to order shirts for both the PGS and PHS kitchen staffs. Only the PGS shirts were ordered. Michel admitted that the PHS shirts had not been ordered, but testified that the PHS shirts had been ordered and distributed within a week after discovering the error.

(2) On September 22, 2008, Michel failed to update the PGS activity hotline, as Colyott had instructed. Michel also failed to update the PGS activity hotline on February 9, 2009 and again on February 17, 2009. At her deposition, Michel testified that "[she] did not check the hotline every Monday to make sure Mrs. Baer [updated] it," stating that she "had far more pressing issues to take care of." Michel also testified that she "failed to maintain [the activity hotline] at least three times."

(3) In October 2008, Michael failed to provide Colyott with her principal's goals by the given deadline. Colyott had requested that Michel meet with him to discuss the goals no later than October 15, 2008. Michel did not provide Colyott with her goals until October 18, 2008.

3

(4) On February 9, 2009, Michel failed to provide Colyott with a count of recycle bins prior to the board meeting scheduled for February 10, 2009, which Plaintiff admitted at her deposition: "I definitely failed to give them on his time line. . . . The board meeting really had very little to do with it. It had to do with getting them to the recycling company so that they could get -- so that they could get, meet our needs."

(5) Plaintiff failed to submit an instructional aide schedule by June 2, 2009. During her deposition, Plaintiff admitted that she had not prepared an instructional aide schedule by June 2, but resisted Colyott's characterization that she had "refused" to submit the schedule.

(6) On November 4, 2009, in preparation of Williams being hired as PGS' assistant principal, Colyott requested that Michel determine which teachers Williams would be evaluating and to update the "evaluation spreadsheet" as necessary. Colyott also requested that Michel present the updated evaluation spreadsheet at the December 8, 2009 Board meeting and then, after the Board meeting, inform Williams the teachers whom she would be responsible for evaluating. Michel did not provide Williams with that information until January 2, 2010.

(7) On February 22, 2010, Plaintiff failed to follow proper procedures regarding a PGS teacher's personal day request, shortly after Colyott had reminded Thole, Williams, and Michel of the procedures for handling personal day requests. Michel testified that she signed the request because "[i]t was a reason that would have been approved," but conceded that she had "made a mistake."

(8) On October 19, 2010, Colyott requested that Michel, along with Thole and Williams, provide feedback on a letter concerning the District's special education teachers no later than October 27, 2010. According to Colyott, Plaintiff never responded to his request. Plaintiff testified that she "honestly believed [she] had sent a response back," but "apparently . . .

4

didn't": "I thought I had sent an e-mail saying the letter looks good. There was no e-mail to be found. I don't know why."

(9)     On October 26, 2010, Colyott met with Plaintiff to discuss her job responsibilities. At this meeting, Colyott presented Michel with a list of expectations. One of these expectations was that Michel would supervise the kindergarten and first grade students during student pick up between the time of 2:55 p.m. and 3:25 p.m. unless Michel was: "(1) attending a meeting which requires your attendance (IEP, 504, etc), (2) handling a student or teacher disciplinary situation that requires your immediate presence, (3) attending a specific meeting with a parent regarding a student, (4) or [sic] that you are absent from school for the day or a portion thereof."

### iii.    Rich Thole and Sue Williams

Rich Thole, who is male, was hired as principal of PHS upon Colyott's promotion to superintendent in 2008. At his deposition, Thole described Colyott as "a very structured individual" with "high expectations." Thole also described Colyott as "probably the most demanding supervisor [he's] ever had." Thole further testified that, because of this, he "made it a point" to accomplish the "expectations given to [him]" by the deadline set by Colyott, even when he believed there "would have been a heck of a lot better approach" than the one taken by Colyott: "So I knew if I was asked to do something, I was going to get it done." On one instance, Thole did fail to meet Colyott's directive: he failed to keep the school's activity hotline updated, and received an email from Colyott stating that if he continued to do so, "consequences [would] follow." He thereafter addressed the problem. Michel, who was copied on the same initial email for the same infraction, did not.

5

Sue Williams was hired as the assistant principal of PGS beginning in January 2010, and was made the principal of pre-kindergarten and grades two through eight for PGS beginning with the 2010-2011 school year. Williams is female, and was 38 years of age when she was hired as assistant principal. Like Thole, Williams testified that Colyott "had very high expectations": "He wanted things done a certain way. I mean, that's -- you know, he kept you on your toes. He was demanding." Williams further testified that, in general, in her role as assistant principal and principal of grades two through eight, she "was turning in [her] work on time." In one instance, Williams did not follow Colyott's directive to order textbooks by a certain deadline. Colyott included the incident in her next evaluation. Williams was made principal of PGS, for all grades, upon Michel's reclassification and dismissal.

Thole and Williams both testified that Michel's "way about doing things was remarkably different" from Colyott's, and that their professional relationship was strained. "Tense, I would use that word," testified Williams.

I.      **Legal Standard for Motion to Reconsider Under FRCP 59(e)**

Reconsideration of a judgment under Rule 59(e) may be granted only if the movant presents newly discovered evidence or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error of law' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto*, 224 F.3d at 606). A court may reconsider where it has "'patently misunderstood a party. . . or has made an error not of reasoning but of apprehension,'" but motions to reconsider should be "'rare.'" *Bank of Waunakee*, 906 F.2d at 1191 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va

1983)). Further, a Rule 59(e) motion cannot be used to introduce evidence that could have been presented prior to the entry of final judgment. *Oto,* 224 F.3d at 606.

**II.   Analysis**
  **A.  Defendant's claim that these are new arguments**

As a threshold matter, the Court can dispose of the Board's argument that Michel is barred from making this motion because the arguments were not made prior to the entry of judgment. Def. Resp. 5, ECF No. 33. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Michel repeatedly raised the "disparate manner" argument in her Response to the Motion for Summary Judgment. Pl. Resp. Mot. S.J. 10–12; 47–8, ECF No. 27.

  **B.  Plaintiff's "Disparate Manner" Argument**

Generally, to establish a prima facie case of discrimination under the Supreme Court's *McDonnell Douglas* framework, a plaintiff must offer proof that: (1) she is a member of a protected class; (2) she performed her job sufficiently to meet the employer's legitimate expectations; (3) despite her satisfactory performance, she suffered an adverse employment action; and (4) similarly situated employees outside of the plaintiff's protected class were treated more favorably. *Everroad*, 604 F.3d at 477; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff is able to establish a prima facie case thereby raising an inference of discrimination, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. If the employer provides one, the burden shifts back to the plaintiff to show that the given reason is pretextual. *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010).

The Seventh Circuit has acknowledged that the legitimate expectations of an employer may themselves be tainted by discrimination. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007)*; see also Curry v. Menard*, 270 F.3d 473, 477 (7th Cir. 2001) ("[W]here

7

the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, 'it makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations.'" (quoting *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999)). To address this problem, the Circuit has developed an alternate formulation of the necessary elements for a prima facie case. The test is delineated in *Peele v. Country Mutual Life Insurance*:

> When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated male and younger employees in a more favorable manner), the second and fourth prongs of *McDonnell Douglas* merge—allowing the plaintiff to establish a prima facie case, stave off summary judgment for the time being, and proceed to the pretext inquiry.

*Peele v. Country Mutual Life Insurance*, 288 F.3d 319, 329 (7th Cir. 2002). In order for this "disparate manner" formulation of the test to apply, the comparator employees (whether younger or male) must still be "similarly situated" to the plaintiff. *Pantoja*, 495 F.3d at 846; *Peele*, 288 F.3d at 329-30. For the Court to find them similarly situated, Michel needed to show that the comparator employees "'had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Peele*, 288 F.3d at 330 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)).

For instance, in *Peele*, the female plaintiff argued that while another male employee's performance had been criticized, he was never formally disciplined. The court in *Peele* found that criticisms against the male employee were "minor" and taken "out of context," particularly compared to the plaintiff's nine critical evaluations, and therefore the plaintiff had failed to show that the two employees were similarly situated. *Peele*, 288 F.3d at 330-31. The Hispanic maintenance worker plaintiff in *Pantoja* attempted to show that he was subject to different

8

employment expectations than his white co-worker when both had failed to prevent spills from coolant tanks, and only the plaintiff was fired; however, the court found that the plaintiff had engaged in other forms of misconduct, including leaving work without permission. *Pantoja*, 495 F.3d at 847. The court found the comparison to his co-worker insufficient to support an inference that the employer's expectations were tailored to race. *Id.*

In its Summary Judgment Order, this Court thoroughly addressed whether Michel had established the existence of similarly situated employees outside of her protected classes and found that she had not. S.J. Order 14–16; 22–23. Michel pointed to Sue Williams, a younger female principal, and Richard Thole, a male principal, as the individuals she wished to establish as her similarly situated counterparts. Pl.'s Mem. Supp. Mot. Alt. at 4. In regard to her gender discrimination claim, the Court stated that "the undisputed record shows that Thole did not share Michel's recurrent inability and/or unwillingness to comply with the deadlines and directives set by Colyott . . .," S.J. Order 15. In regard to Michel's age discrimination claim, the Court found that "Williams' unrebutted testimony establishes that, with the exception of the textbook incident, she was able to meet Colyott's deadlines and comply with his directives—unlike Michel." S.J. Order 23.

The Court detailed its findings that Michel repeatedly missed deadlines, failed to follow instructions, and did not follow directives set by Colyott. S.J. Order 6–9. As the record indicates, and as the Court explained in its Summary Judgment Order, Williams and Thole took extra pains to meet deadlines and perform tasks as directed, regardless of their seemingly arbitrary or trivial nature. *See e.g.* the court's reliance on the following testimony, S.J. Order 15–16: Thole Dep. Tr. 37:7–21, ECF No. 26-4 ("I can say that Jim's probably the most demanding supervisor I've ever had . . . . I knew that if there were expectations given to me, which there were, you know, . . . I

9

knew if I was asked to do something, I was going to get it done. I mean, I made it a point."); *id.* at 69:24–70:4 ("... Becky's way about doing things was remarkably different than Jim's and I would even say, you know, a significant amount different than how I approach things."); Williams Dep. 66:1–4, ECF No. 26-5 at 19 ("Becky hadn't done some things that [Colyott] asked and, you know, he followed up through that which happened more often than to me because I was turning in my work on time."); Colyott Dep. 59:16–23, ECF No. 26-3 at 17 (answering whether Williams or Thole had similar problems following directives or timelines, Colyott responded "No, never" and "No, not at all"). In relying on these statements, the Court concluded that Williams and Thole had acted with "differentiating or mitigating circumstances" whose dissimilar work styles made them inappropriate comparators to Michel. *Peele*, 288 F.3d at 330.

To the extent that Williams and Thole made mistakes similar to Michel's, they were not treated differently than her. On the less frequent occasions when Williams or Thole did not meet Colyott's expectations, they, too, were reprimanded. When Williams missed a deadline for ordering textbooks, her written evaluation reflected the mistake, (Williams Dep. 28:17–29:4), and when Thole had not properly overseen updating the school's activity hotline, he received written reprimand by email (in fact, in the same email received by Michel for the same offense), and thereafter corrected the problem. Def.'s Mot. S.J., Colyott 10/19/08 Email, ECF No. 26-7 at 17. As in *Peele*, the "minor" criticisms of Williams and Thole pale in comparison to the litany of failures by Michel—some admittedly small, but others significant—that comprised the Board's decision to terminate her employment. *See Peele*, 288 F.3d at 330-31.

Michel claims she has presented evidence from which a reasonable jury could infer that Colyott's expectations for her were different because she was a member of a protected class.

10

The only inference that can be drawn from Plaintiff's evidence is that Colyott's expectations were different in response to Plaintiff's performance history. Michel's failures to meet deadlines began well before Colyott took extra steps to address her performance: for instance, as early as October 2008, Michel submitted a requested list of goals several days after the deadline Colyott had set, ECF No. 26 at 5; yet it was not until October 2010, and after many other incidents of missed deadlines and unfulfilled requests, that Colyott met with Michel to discuss her employment expectations and to provide her with the itemized schedule that neither Williams nor Thole was required to follow. ECF No. 27 at 13.

If a district court determines that a plaintiff has failed to identify a similarly situated co-worker outside of her protected class, or that the co-worker identified, while similarly situated, was not treated in a more favorable manner, it need not address any of the underlying allegations of disparate treatment. *Peele*, 288 F.3d at 331. The Summary Judgment Order clearly indicated Michel's failure to show either that the other principals were similarly situated, or that they were treated more favorably. Because Michel did not present evidence sufficient to make a prima facie case, and therefore did not raise an inference of discriminatory intent on the basis of either gender or age, it was unnecessary for the Court to proceed to the pretext inquiry. *Id.*, at 331–32.

The Court's analysis of Plaintiff's legal arguments was thorough and sound, with no patent misunderstanding or misapprehension of Plaintiff's claims. The Court acknowledged Michel's argument that Williams and Thole were similarly situated individuals who were subject to less rigid application of Colyott's employment expectations. In doing so, it found that Williams and Thole were not sufficiently similar to Michel precisely because their performance histories indicated a willingness to abide by deadlines and meet directives in ways that differentiated and mitigated their conduct. S.J. Order 16; 22–3. For that reason, the Court found

11

that Michel could not make out a prima facie case, even under the alternate framework laid out in *Peele*, 288 F.3d at 329.

## CONCLUSION

Accordingly, Plaintiff's Motion to Alter or Amend Judgment, ECF No. 32, is DENIED.

ENTERED: September 28, 2016

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
